FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**IN THE UNITED STATES DISTRICT COURT** 2013 JUL 22 PM 3: 36
**FOR THE DISTRICT OF COLORADO**

JEFFREY P. COLWELL
CLERK

Civil Action No. **13 - CV - 01949**

(To be supplied by the court)

BY_____DEP. CLK

FERNANDA   RIVERA , Plaintiff,

v.

LITTLETON  HOUSING  AUTHORITY

_____ ,

_____ ,

_____ ,

_____ ,

_____ ,

_____ ,

_____ , Defendant(s).

(List each named defendant on a separate line.)

---

**COMPLAINT**

---

(Rev. 07/06)

**LITTLETON
HOUSING
AUTHORITY**

5844 South Datura Street, Littleton, CO 80120*Phone 303/794-9608*Fax 303/794-0806

November 3, 2008

Pedro Reyes
3893 E. Costilla Ave
Centennial, CO  80122

RE: Tenant Moving

Dear Landlord:

This letter is to notify you that effective **12/01/2008** the Littleton Housing Authority will terminate the Housing Assistance Contract for **Martin Rivera, 3893 E. Costilla Ave., Centennial, CO  80122**.  The reason is as follows:

- Tenant has passed away.

The Littleton Housing Authority would like to thank you for participating as a landlord in the Section 8 Rental Assistance Program.  In the future, should your property become available the Littleton Housing Authority hopes that you will again consider participating in the program.

If you have any questions, please contact me at the above number Monday through Friday 8:00 A.M. to 5:00 P.M.

Sincerely,

Kimberly Kamas,
Housing Specialist

EXHIBIT

EXHIBIT
2

# HOUSING AUTHORITY

5844 S. DATURA STREET, LITTLETON, CO 80120 * PHONE 303-794-9608 * TDD (COLC

11-05-08A10:16 RCVD

## PRELIMINARY APPLICATION

**Programs Applying For:** (Check all that apply)

**Senior Housing:**

☐ Alyson Court   ☐ Amity Plaza   ☐ Bradley House   ☐ Geneva Village (not subsidized, flat rate)

**Family Housing:**

☐ Family Housing   ☐ John W. Newey Family Housing

☒ **Section 8 Housing Choice Vouchers**

**EXHIBIT 3**

Name of Head of Household: FERNANDA _____ L. _____ RIVERA
                            First          M.I.           Last

Head of Household Social Security Number: 650 - 16 - 7853   Date of Birth: 05 / 30 / 1927

Current Address: 3893 E. COSTILLA AVE   City: CENTENNIAL   State: Co   Zip Code: 80122

**Mailing address (if different):**

Mailing Address: _____ N.A. _____   City: _____   State: _____   Zip Code: _____

Home Phone: ( ) _____   Message Phone: ( ) _____

Work Phone: ( ) _____   Cell Phone: ( ) _____

**LIST ALL PERSONS WHO WILL BE LIVING IN THE HOME:**

| First Name | MI | Last Name | Social Security Number | Relationship | Date of Birth | Age | Sex | Birthplace (State / Country) |
|---|---|---|---|---|---|---|---|---|
| FERNANDA | L. | RIVERA | 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 | SELF | 05-30-27 | 81 | F | PHILIPPINES |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Please attach additional pages, if necessary.

Does anyone in the household require an accommodation?

## PROGRAM INTEGRITY:

Has anyone in your household been arrested or convicted for the use, sale, manufacture or distribution of controlled substances (drugs)?   _____ Yes   X No

If yes, Who? When? For What? _____

Does anyone is your household currently use a controlled or illegal drug?   _____ Yes   X No

If yes, Who? When? For What? _____

Has anyone in your household ever been convicted of a felony or arrested for violent criminal activity?   _____ Yes   X No

If yes, Who? When? For What? _____

Does anyone outside of your household pay for any of your bills or expenses?   X Yes   _____ No

If yes, Who? When? For What? DAUGHTER PAYS FOR FOOD/UTILITIES

**INCOME:** List income for ALL household members 18 years of age and older.

**Sources of Income:** Employment, Food Stamps, AND, TANF, Social Security, SSI, Pensions, Disability compensation, unemployment, interest, babysitting, alimony, child support, annuities, dividends, income from rental property, Armed Force Reserves, scholarships, and/or grants, etc.

## PARTIES

1. Plaintiff FERNANDA RIVERA is a citizen of THE UNITED STATES who presently resides at the following address:
6039 S. BROADWAY LITTLETON, CO 80121

2. Defendant LITTLETON HOUSING AUTHORITY is a citizen of _____
who live(s) at or is/are located at the following address:
5745 SOUTH BANNOCK ST. LITTLETON, CO 80120

3. Defendant _____ is a citizen of _____
who live(s) at or is/are located at the following address:
_____

(Attach a separate page, if necessary, to list additional parties.)

## JURISDICTION

4. Jurisdiction is asserted pursuant to following statutory authorities:
DEPARTMENT OF HOUSING & URBAN DEVELOPMENT.
OFFICE OF FAIR HOUSING & EQUAL OPPORTUNITY
INTEGRATION MANDATE - DEPT OF JUSTICE, ADA

5. Briefly state the background of your case:

FERNANDA RIVERA IS ELDERLY AND DISABLED. SHE WAS LIVING WITH HER SPOUSE WHO WAS THE HEAD OF THE HOUSEHOLD. WHEN AGE & DISABILITY PREVENTED THEM FROM LIVING ON THEIR OWN, THE LITTLETON HOUSING AUTHORITY, THROUGH INTERVENTION OF THE COLORADO LEGAL SERVICES, ALLOWED FERNANDA & HER SPOUSE MARTIN RIVERA TO LIVE IN THEIR DAUGHTER'S HOME, TO BE CARED FOR WITH SECTION 8 ASSISTANCE. WHEN FERNANDA'S SPOUSE PASSED AWAY ON OCTOBER 23, 2008, THE LITTLETON HOUSING AUTHORITY (LHA) MADE HOUSING UNAVAILABLE TO FERNANDA BY MAKING HER APPLY FOR A NEW HOUSING VOUCHER, WHEN HER HOH'S VOUCHER WAS VALID INSTEAD OF TRANSFERRING OWNERSHIP OF HER DECEASED HOH TO HER. (PLEASE SEE EXHIBIT 2 $3) FERNANDA DID AS SHE WAS TOLD AND REAPPLIED FOR A NEW HCV VOUCHER, IN 2010 FERNANDA WAS APPROVED FOR A NEW SECTION 8 VOUCHER. THE LHA AGAIN MADE HOUSING UNAVAILABLE BY DENYING ELDERLY & DISABLED FERNANDA HOUSING ASSISTANCE UNLESS SHE MOVED TO A FACILITY AGAINST HER WILL. LHA EFFECTED THE UNJUST ISOLATION & SEGREGATION OF FERNANDA. LHA EFFECTED THE REMOVAL OF FERNANDA FROM THE MOST INTEGRATED SETTING WHERE SHE WAS RECEIVING H.C.B.S.

## Fernanda Rivera v. Littleton Housing Authority

### FIRST CLAIM FOR RELIEF

### AND SUPPORTING FACTUAL ALLEGATIONS

(Please number your paragraphs and attach any necessary additional pages)

The Plaintiff is seeking $30,552.00 in damages incurred from the loss of Federal Housing assistance to the Plaintiff from October of 2008 to July of 2013 as a result of the Respondent's unjust denial of housing to the Plaintiff. ( **Exhibit 1**- Littleton Housing Authority payment schedule).

# LITTLETON
# HOUSING
# AUTHORITY

5844 South Datura Street, Littleton, CO 80120-Phone (303) 794-9608 * Fax (303) 794-0806

July 29, 2006

MARTIN RIVERA
3893 E COSTILLA AVE
CENTENNIAL CO 80122

RE: RE-CERTIFICATION

Dear Tenant:

We are happy to notify you that you have been re-certified for rental assistance under the Section 8 Housing Choice Voucher Program, the rental payment of **$900.00** will be shared by the Littleton Housing Authority.

| | |
|---|---|
| You will pay | **$364.00** |
| LHA Pays | **$536.00** |
| Effective Date | **09/01/2006** |

**Please sign and return the attached lease amendment(s).** If we do not receive the signed paperwork within 10 days there will be no HAP payment issued for the following month and you will be responsible for the full amount of the rent. If you have any questions please feel free to call me at (303) 794-9608.

*Please remember that all changes must be reported, in writing, within 10 days of the occurence to avoid termination of rental assistance.*

Sincerely,

Shirley A Baca
Housing Coordinator

*Alternative formats of this document are availible upon request*

DOC. 2   LHA CONTRACT/LEASE

EXHIBIT
1

## Fernanda Rivera v. Littleton Housing Authority

### SECOND CLAIM FOR RELIEF

### AND SUPPORTING FACTUAL ALLEGATIONS

The Plaintiff is seeking $15,000 in damages resulting from emotional distress and suffering brought about by the Respondent's arbitrary denial of housing to the Plaintiff.

**# 24 and # 25** of the Respondent's rebuttal indicate that the Respondent denied housing to the Plaintiff based on the application of the inappropriate Federal Housing Regulation. (**Exhibit** 4-3)

In rebuttal # 24, the respondent states that having granted the elderly and disabled Plaintiff's request for reasonable accommodation to be allowed to live in her daughter's home to be cared for and receive Home and Community Based Services is in violation of 24 C.F.R. 982.352(a)(6) Denial of Owner, and that the Respondent was prohibited by law from granting this request.

The Plaintiff counters with 24 CFR 982.352 (a)(7) Denial of Owner, which further refers to 24 CFR 982.306 (d), which clearly states that the PHA **may** approve such an owner if it would be a reasonable accommodation for a family member who is a person with a disability; proving that the Respondent had inappropriately made housing unavailable to the Plaintiff.

**In rebuttal # 25**, the Respondent states that **Part B Section 13 of the HAP Contract (b)(c)(d)** sets out that a 'covered individual' may not have any direct or indirect interest in the HAP Contract. The Respondent has clearly stated in rebuttal # 25 that it regards the Plaintiff as a 'covered' individual as defined by the regulation.

The Plaintiff strongly argues that the Respondent violated the Plaintiff's rights to Fair Housing because **Part B Section 13(a) of the HAP Contract** clearly defines who the regulation establishes as a covered individual, and that the Plaintiff, as evidenced by (Exhibit 5-2) below; is clearly and inarguably **NOT** a 'covered individual' as defined by **Part B Section 13(a) of the HAP Contract.** The Plaintiff asserts that the Respondent had arbitrarily implemented **Part B Section 13 of the HAP Contract (b)(c)(d)** as grounds to deny housing and make housing unavailable to the Plaintiff when in fact **Part B Section 13(a) of the HAP Contract** proves otherwise that as a reasonable accommodation, the Plaintiff was qualified for housing assistance that the Respondent unlawfully denied.

(Exhibit 5-2) **Part B Section 13(a) Conflict of Interest** clearly defines a 'covered individual.' It is clearly stated by the regulation that the Plaintiff is **not** a covered individual. The Plaintiff asserts that the Respondent had no grounds to deny housing to the Plaintiff on the premise that

## Fernanda Rivera v. Littleton Housing Authority

she was a 'covered individual' and that by having done so had underhandedly effected an unlawful and arbitrary denial of housing to the Plaintiff.

(Exhibit 5-3) **Part B Section 8(g) of the HAP Contract** affirms that the Plaintiff was entitled to the reasonable accommodation that the Respondent had **arbitrarily denied** and continues to deny.

The Plaintiff asserts that the Respondent had no valid grounds to deny housing to Fernanda.

# WAGENLANDER & HEISTERKAMP, LLC

### ATTORNEYS AT LAW

DENVER, COLORADO
ULAANBAATAR, MONGOLIA
Suite 1202
1700 Broadway
Denver, Colorado 80290-1201
United States
(303) 832-6511
Fax: (303) 830-2246
wagenlan@wagenlander.com

James F. Wagenlander
David V. Heisterkamp II
Amber L. Hunter
Sylvia Carley

Of Counsel:
B. Enkhbat*
*(LICENSED ONLY IN MONGOLIA)

Colorado Civil Rights Division
JAN 2 3 2013
Denver, Colorado

January 22, 2013

Ms. Teresa J. Devlin
Colorado Dept. of Regulatory Agencies
Division of Civil Rights
1560 Broadway, Suite 1050
Denver, CO 80202-5143

Re:    Charge No. H20130071
*Fernanda Rivera v.*
*South Metro Housing Options*

Dear Ms. Devlin:

This firm represents Respondent South Metro Housing Options.

Respondent hereby files the following response to the complaint received in the above-captioned matter:

1. Respondent denies that it has discriminated against the Complainant based on disability or national origin.

2. Respondent denies that Complainant was subjected to nnequal terms and conditions of housing and that housing was made unavailable to the Complainant hecause of her disability or national origin.

3. Respondent denies that it has discriminated against Complainant under Sections 804(a), (b) and (f) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, Section 504 of the Rehabilitation Act of 1973 (Section 504) and Americans with Disabilities Act (ADA).

4. Complainant's statement fails to set forth facts constituting a discriminatory housing practice or conduct. The statement provided by Complainant fails to show any connection between activities of the Respondent and alleged housing discrimination based on disability or national origin against the Complainant.

**EXHIBIT**
**4-1**

Colorado Division of Civil Rights
Rivera v. SMHO
1/22/131/22/13
Page 3 of 6

## ISSUE: REMOVAL FROM SMHO WAITLIST

7. On November 5, 2008, Complainant submitted an application for the City of Littleton Section 8 HCV program. (Exhibit E)

8. Complainant's application was received by SMHO and she was notified in writing on December 24, 2008 that she had been added to the waiting list. (Exhibit F)

9. SMHO conducted the required background check on Complainant on March 30, 2010 in preparation for issuing her a voucher. (Exhibit G)

10. On April 6, 2010, SMHO informed Complainant that she was approaching the top of the waiting list and that SMHO needed to verify certain information. (Exhibit H)

11. Complainant completed the required forms and returned them to SMHO. (Exhibit I)

12. SMHO collected additional financial information in preparation for issuing Complainant a voucher. (Exhibit J)

13. On April 8, 2010, Robin Ramirez, an SMHO Section 8 Housing Specialist at the time, met with Teresita Reyes, Complainant's daughter. Mrs. Reyes explained that at one point in the past her father lived with her and her husband in a home owned by them and that he had a Section 8 voucher that was paid to them as the landlord. Ms. Ramirez explained that under the current rules of the program that Mrs. Reyes could not be the Housing Assistance Payment (HAP) landlord for Complainant's voucher. (Exhibit K and Affidavit of Robin Ramirez)

14. On April 9, 2010, Mrs. Reyes left a message for Ms. Ramirez requesting a reasonable accommodation and an appointment with SMHO. (Exhibit K and Affidavit of Robin Ramirez)

15. On April 15, 2010, Robin Ramirez meet with Mr. and Mrs. Reyes to discuss Complainant living with them. (Exhibit L and Affidavit of Robin Ramirez).

16. At the meeting, Mrs. Reyes provide SMHO with a letter from Complainant's physician, Robert M. Leder, MD. (Exhibit M and Affidavit of Robin Ramirez)

17. On April 20, 2010, SMHO informed Complainant in writing that she had been approved for rental assistance, a Section 8 voucher, and that in order to receive the assistance she needed to attend an orientation at their office and that she had



EXHIBIT
4-2

Colorado Division of Civil Rights
Rivera v. SMHO
1/22/131/22/13
Page 4 of 6

been scheduled for the next available orientation on May 27, 2010 at 1:00 pm. (Exhibit N)

18. In preparation for the orientation meeting, Ms. Ramirez completed the Housing Choice Voucher paperwork. (Exhibit O and Affidavit of Robin Ramirez)

19. The mandatory orientation was rescheduled to May 25, 2010 at 1:00 pm. and Complainant was informed in writing. (Exhibit P)

20. Mrs. Reyes came in to SMHO on May 25, 2010 at 1:00 pm for the mandatory orientation; however, the Complaint, who was the voucher holder, did not attend. Mrs. Reyes spoke with Ms. Ramirez and then with Ms. Kimberly Kamay. Ms. Kamay provided a written letter regarding these conversations and SMHO's response to the accommodation request requesting that Complainant be allowed to live in the home owned by Mrs. Reyes to Mrs. Reyes on June 2, 2010. (Exhibit Q and Affidavit of Robin Ramirez)

21. Ms. Kamay explained to Mrs. Reyes that there are federal program requirements that would prohibit Mrs. Reyes from being the HAP landlord. Mrs. Reyes asserted that she was no longer interested in her mother receiving Section 8 assistance if her mother could not live with her in Mrs. Reyes home. (Exhibit Q)

22. Mr. and Mrs. Reyes chose not to stay for the required briefing. (Exhibit Q and Affidavit of Robin Ramirez)

23. In the follow-up letter, Ms. Kamay clearly explained the HUD program requirements that would prohibit Mrs. Reyes from being the HAP landlord receiving her mother's Section 8 voucher. (Exhibit Q)

24. SMHO cannot grant a reasonable accommodation that otherwise violates federal law. The federal regulations at 24 C.F.R. 982.352(a)(6) defines ineligible housing as a unit occupied by its owner or by a person with any interest in the unit. If a unit is ineligible it may not be assisted by a public housing authority (PHA) with a Section 8 Housing Choice voucher. Complainant's reasonable accommodation request to allow her to live with her daughter in her daughter's home clearly violates 24 C.F.R. 982.352(a)(6) and SMHO was prohibited by law from granting this request.

25. Additionally, as part of the Section 8 HCV program, the landlord and the PHA are required by law to sign the HAP Contract. Neither the landlord nor the PHA are allowed to make changes or otherwise alter the HUD issued HAP contract. Part B of the HAP Contract, 13 (b)(c)(d) sets out that a covered individual may not have any direct or indirect interest in the HAP contract or in any benefits or payments under the contract, including the interest of an immediate family member of such



**EXHIBIT**
**4-3**

covered individual while such person is a covered individual or during one year thereafter. In the living scenario requested by Complainant, the covered individual would be Complainant. So neither Complainant nor Complainant's immediate family members, including her daughter Mrs. Reyes, could have a direct or indirect interest in the HAP contract or in any benefits or payments under the contract. Mrs. Reyes would have had a direct interest in the HAP contract and in benefits and payments made under the contract. This would have violated the federal requirements as set out by HUD in the HAP contract and SMHO had to deny the request.

26. On June 4, 2010, SMHO sent a letter to Complainant again notifying her that her application had been approved and that he she needed to attend an orientation at their office. (Exhibit R) The letter also explains that failure to attend to scheduled orientations will result in her name being removed from the Section 8 waiting list.

27. On June 14, 2010, SMHO sent a letter to Complainant notifying her that she did not attend two scheduled orientations and that her name had been removed from the Section 8 waiting list. The letter also informed Complainant that if she disagreed with this decision she could request an informal review. (Exhibit S)

28. Complainant did not request an informal review and her name was removed from the City of Littleton Section 8 waiting list. (Affidavit of Robin Ramirez)

29. On October 26, 2011, Complainant submitted an application to SMHO for its Senior/Disabled Housing program. (Exhibit T)

30. Complainant's application for the Senior/Disabled Housing program was accepted by SMHO and written notification of the acceptance was mailed to Complainant on November 4, 2011. (Exhibit U)

31. Complainant is currently on SMHO's Senior/Disabled Housing program waiting list.

32. LHA has never subjected Complainant to unequal terms or conditions of housing.

**EXHIBIT**
**4-4**

| | |
|---|---|
| Housing Assistance Payments Contract<br>(HAP Contract)<br>Section 8 Tenant-Based Assistance<br>**Housing Choice Voucher Program** | U.S. Department of Housing<br>and Urban Development<br>Office of Public and Indian Housing<br>OMB Approval 2577-0169 (Exp. 04/30/2014) |

**Privacy Act Statement.** The Department of Housing and Urban Development (HUD) is authorized to collect the information required on this form by Section 8 of the U.S. Housing Act of 1937 (42 U.S.C. 1437f). Collection of family members' names and unit address, and owner's name and payment address is mandatory. The information is used to provide Section 8 tenant-based assistance under the Housing Choice Voucher program in the form of housing assistance payments. The information also specifies what utilities and appliances are to be supplied by the owner, and what utilities and appliances are to be supplied by the tenant. HUD may disclose this information to Federal, State and local agencies when relevant to civil, criminal, or regulatory investigations and prosecutions. It will not be otherwise disclosed or released outside of HUD, except as permitted or required by law. Failure to provide any of the information may result in delay or rejection of family or owner participation in the program.

**Instructions for use of HAP Contract**

This form of Housing Assistance Payments Contract (HAP contract) is used to provide Section 8 tenant-based assistance under the housing choice voucher program (voucher program) of the U.S. Department of Housing and Urban Development (HUD). The main regulation for this program is 24 Code of Federal Regulations Part 982.

The local voucher program is administered by a public housing agency (PHA) . The HAP contract is an agreement between the PHA and the owner of a unit occupied by an assisted family. The HAP contract has three parts:

Part A Contract information (fill-ins). See section by section instructions. Part B Body of contract Part C Tenancy addendum

**Use of this form**

Use of this HAP contract is required by HUD. Modification of the HAP contract is not permitted. The HAP contract must be word-for-word in the form prescribed by HUD.

However, the PHA may choose to add the following:

Language that prohibits the owner from collecting a security deposit in excess of private market practice, or in excess of amounts charged by the owner to unassisted tenants. Such a prohibition must be added to Part A of the HAP contract.

Language that defines when the housing assistance payment by the PHA is deemed received by the owner (e.g., upon mailing by the PHA or actual receipt by the owner). Such language must be added to Part A of the HAP contract.

To prepare the HAP contract, fill in all contract information in Part A of the contract. Part A must then be executed by the owner and the PHA.

**Use for special housing types**

In addition to use for the basic Section 8 voucher program, this form must also be used for the following "special housing types" which are voucher program variants for special needs (see 24 CFR Part 982, Subpart M): (1) single room occupancy (SRO) housing; (2) congregate housing; (3) group home; (4) shared housing; and (5) manufactured home rental by a family that leases the manufactured home and space. When this form is used for a special housing type, the special housing type shall be specified in Part A of the HAP contract, as follows: "This HAP contract is used for the following special housing type under HUD regulations for the Section 8 voucher program: (Insert Name of Special Housing type)."

However, this form may not be used for the following special housing types: (1) manufactured home space rental by a family that owns the manufactured home and leases only the space; (2) cooperative housing; and (3) the homeownership option under Section 8(y) of the United States Housing Act of 1937 (42 U.S.C. 1437f(y)).

**How to fill in Part A**

Section by Section Instructions

Section 2: **Tenant**

Enter full name of tenant.

Section 3. **Contract Unit**

Enter address of unit, including apartment number, if any.

Section 4. **Household Members**

Enter full names of all PHA-approved household members. Specify if any such person is a live-in aide, which is a person approved by the PHA to reside in the unit to provide supportive services for a family member who is a person with disabilities.

Section 5. **Initial Lease Term**

Enter first date and last date of initial lease term.

The initial lease term must be for at least one year. However, the PHA may approve a shorter initial lease term if the PHA determines that:

Such shorter term would improve housing opportunities for the tenant, **and**

Such shorter term is the prevailing local market practice.

Section 6. **Initial Rent to Owner**

Enter the amount of the monthly rent to owner during the initial lease term. The PHA must determine that the rent to owner is reasonable in comparison to rent for other comparable unassisted units. During the initial lease term, the owner may not raise the rent to owner.

Section 7. **Housing Assistance Payment**

Enter the initial amount of the monthly housing assistance payment.

Section 8. **Utilities and Appliances.**

The lease and the HAP contract must specify what utilities and appliances are to be supplied by the owner, and what utilities and appliances are to be supplied by the tenant. Fill in section 8 to show who is responsible to provide or pay for utilities and appliances.

EXHIBIT
5-1

(7)   The PHA may terminate the HAP contract if the PHA determines that the contract unit does not provide adequate space in accordance with the HQS because of an increase in family size or a change in family composition.

(8)   If the family breaks up, the PHA may terminate the HAP contract, or may continue housing assistance payments on behalf of family members who remain in the contract unit.

(9)   The PHA may terminate the HAP contract if the PHA determines that the unit does not meet all requirements of the HQS, or determines that the owner has otherwise breached the HAP contract.

## 5.  Provision and Payment for Utilities and Appliances

a.   The lease must specify what utilities are to be provided or paid by the owner or the tenant.

b.   The lease must specify what appliances are to be provided or paid by the owner or the tenant.

c.   Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant. The lease shall be consistent with the HAP contract.

## 6.  Rent to Owner: Reasonable Rent

a    During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

b.  The PHA must determine whether the rent to owner is reasonable in comparison to rent for other comparable unassisted units. To make this determination, the PHA must consider:

(1)   The location, quality, size, unit type, and age of the contract unit; and

(2)   Any amenities, housing services, maintenance and utilities provided and paid by the owner.

c.  The PHA must redetermine the reasonable rent when required in accordance with HUD requirements. The PHA may redetermine the reasonable rent at any time.

d.  During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere.

## 7.  PHA Payment to Owner

a.  When paid

(1)   During the term of the HAP contract, the PHA must make monthly housing assistance payments to the owner on behalf of the family at the beginning of each month.

(2)   The PHA must pay housing assistance payments promptly when due to the owner.

(3)   If housing assistance payments are not paid promptly when due after the first two calendar months of the HAP contract term, the PHA shall pay the owner penalties if all of the following circumstances apply: (i) Such penalties are in accordance with generally accepted practices and law, as applicable in the local housing market, governing penalties for late payment of rent by a

tenant; (ii) It is the owner's practice to charge such penalties for assisted and unassisted tenants; and (iii) The owner also charges such penalties against the tenant for late payment of family rent to owner. However, the PHA shall not be obligated to pay any late payment penalty if HUD determines that late payment by the PHA is due to factors beyond the PHA's control. Moreover, the PHA shall not be obligated to pay any late payment penalty if housing assistance payments by the PHA are delayed or denied as a remedy for owner breach of the HAP contract (including any of the following PHA remedies: recovery of overpayments, suspension of housing assistance payments, abatement or reduction of housing assistance payments, termination of housing assistance payments and termination of the contract).

(4)  Housing assistance payments shall only be paid to the owner while the family is residing in the contract unit during the term of the HAP contract. The PHA shall not pay a housing assistance payment to the owner for any month after the month when the family moves out.

b.  **Owner compliance with HAP contract.** Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract.

c.  **Amount of PHA payment to owner**

(1)   The amount of the monthly PHA housing assistance payment to the owner shall be determined by the PHA in accordance with HUD requirements for a tenancy under the voucher program.

(2)   The amount of the PHA housing assistance payment is subject to change during the HAP contract term in accordance with HUD requirements. The PHA must notify the family and the owner of any changes in the amount of the housing assistance payment.

(3)   The housing assistance payment for the first month of the HAP contract term shall be prorated for a partial month.

d.  **Application of payment.** The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

e   **Limit of PHA responsibility.**

(1)   The PHA is only responsible for making housing assistance payments to the owner in accordance with the HAP contract and HUD requirements for a tenancy under the voucher program.

(2)   The PHA shall not pay any portion of the rent to owner in excess of the housing assistance payment. The PHA shall not pay any other claim by the owner against the family.

f    **Overpayment to owner.** If the PHA determines that the owner is not entitled to the housing assistance payment or any part of it, the PHA, in addition to other remedies, may deduct the amount of the overpayment from any amounts due the owner (including amounts due under any other Section 8 assistance contract).

## 8.  Owner Certification

---



form HUD-52641 (8/2009)
ref Handbook 7420.8

the contract unit or the premises or with implementation of the HAP contract.

### 13. Conflict of Interest

a. "Covered individual" means a person or entity who is a member of any of the following classes:

   (1) Any present or former member or officer of the PHA (except a PHA commissioner who is a participant in the program);

   (2) Any employee of the PHA, or any contractor, sub-contractor or agent of the PHA, who formulates policy or who influences decisions with respect to the program;

   (3) Any public official, member of a governing body, or State or local legislator, who exercises functions or responsibilities with respect to the program; or

   (4) Any member of the Congress of the United States.

b. A covered individual may not have any direct or indirect interest in the HAP contract or in any benefits or payments under the contract (including the interest of an immediate family member of such covered individual) while such person is a covered individual or during one year thereafter.

c. "Immediate family member" means the spouse, parent (including a stepparent), child (including a stepchild), grandparent, grandchild, sister or brother (including a stepsister or stepbrother) of any covered individual.

d. The owner certifies and is responsible for assuring that no person or entity has or will have a prohibited interest, at execution of the HAP contract, or at any time during the HAP contract term.

e. If a prohibited interest occurs, the owner shall promptly and fully disclose such interest to the PHA and HUD.

f. The conflict of interest prohibition under this section may be waived by the HUD field office for good cause.

g. No member of or delegate to the Congress of the United States or resident commissioner shall be admitted to any share or part of the HAP contract or to any benefits which may arise from it.

### 14. Assignment of the HAP Contract

a. The owner may not assign the HAP contract to a new owner without the prior written consent of the PHA.

b. If the owner requests PHA consent to assign the HAP contract to a new owner, the owner shall supply any information as required by the PHA pertinent to the proposed assignment.

c. The HAP contract may not be assigned to a new owner that is debarred, suspended or subject to a limited denial of participation under HUD regulations (see 24 Code of Federal Regulations Part 24).

d. The HAP contract may not be assigned to a new owner if HUD has prohibited such assignment because:

   (1) The Federal government has instituted an administrative or judicial action against the owner or proposed new owner for violation of the Fair Housing Act or other Federal equal opportunity requirements, and such action is pending; or

   (2) A court or administrative agency has determined that the owner or proposed new owner violated

the Fair Housing Act or other Federal equal opportunity requirements.

e. The HAP contract may not be assigned to a new owner if the new owner (including a principal or other interested party) is the parent, child, grandparent, grandchild, sister or brother of the family, unless the PHA has determined (and has notified the family of such determination) that approving the assignment, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

f. The PHA may deny approval to assign the HAP contract if the owner or proposed new owner (including a principal or other interested party):

   (1) Has violated obligations under a housing assistance payments contract under Section 8;

   (2) Has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing program;

   (3) Has engaged in any drug-related criminal activity or any violent criminal activity;

   (4) Has a history or practice of non-compliance with the HQS for units leased under the Section 8 tenant-based programs, or non-compliance with applicable housing standards for units leased with project-based Section 8 assistance or for units leased under any other Federal housing program;

   (5) Has a history or practice of failing to terminate tenancy of tenants assisted under any Federally assisted housing program for activity engaged in by the tenant, any member of the household, a guest or another person under the control of any member of the household that:

      (a) Threatens the right to peaceful enjoyment of the premises by other residents;

      (b) Threatens the health or safety of other residents, of employees of the PHA, or of owner employees or other persons engaged in management of the housing;

      (c) Threatens the health or safety of, or the right to peaceful enjoyment of their residents by, persons residing in the immediate vicinity of the premises; or

      (d) Is drug-related criminal activity or violent criminal activity;

   (6) Has a history or practice of renting units that fail to meet State or local housing codes; or

   (7) Has not paid State or local real estate taxes, fines or assessments.

g. The new owner must agree to be bound by and comply with the HAP contract. The agreement must be in writing, and in a form acceptable to the PHA. The new owner must give the PHA a copy of the executed agreement.

### 15. Foreclosure.
In the case of any foreclosure, the immediate successor in interest in the property pursuant to the foreclosure shall assume such interest subject to the lease between the prior owner and the tenant and to the HAP contract between the prior owner and the PHA for the occupied unit. This provision does not affect any State or local law that provides longer time periods or other additional protections for tenants. **This provision will sunset on December 31, 2012 unless extended by law.**

---

## Fernanda Rivera v. Littleton Housing Authority

### THIRD CLAIM FOR RELIEF

### AND SUPPORTING FACTUAL ALLEGATIONS

The Plaintiff is seeking $10,000.00 in damages for the Respondent's infringement on her right to the enjoyment of dwelling. The Respondent made housing unavailable to the Plaintiff by imposing criteria that disqualified her from receiving Federal housing assistance. The Respondent refused to grant the Plaintiff the approved Section 8 Housing Choice Voucher unless she moved out of her home and lived in a facility against her will.

The Plaintiff's home had been modified (home modifications) by the Department of Human Services to accommodate the Plaintiff's disability. The Respondent's inappropriate denial of housing to the Plaintiff imposed an undue physical burden to the Plaintiff because it effected her removal from the most integrated setting, where she had been receiving care appropriate to her needs through the Home and Community Based Services (HCBS).

## Fernanda Rivera v. Littleton Housing Authority

FOURTH CLAIM FOR RELIEF

AND SUPPORTING FACTUAL ALLEGATIONS

The Plaintiff is seeking $3,675.00 for 105 hours for time dedicated to legal research computed at the rate of $35.00/hr.

# U. S. Department of Housing and Urban Development



Office of Fair Housing and Equal Opportunity

**JAN 1 5 2013**

Region VIII, Denver
UMB Plaza Building
1670 Broadway Street
Denver, Colorado 80202-4801

Phone: 303-672-5437
Toll Free: 1-800-877-7353
Fax: 303-672-5026
TDD/TTY: 303-672-5248
Web: www.hud.gov

*Certified Mail-Return Receipt Requested*

Fernanda Rivera
6039 S. Broadway
Greenwood Village, CO 80121

Subject: Housing Discrimination Complaint: Rivera v. South Metro Housing Options
       Title VIII Case Number: 08-13-0078-8
       Title VI Case Number: 08-13-0078-6
       Section 504 Case Number: 08-13-0078-4
       ADA Case Number 08-13-0078-D

Dear Complainant:

The subject housing discrimination complaint was filed on December 26, 2012, pursuant to the Fair Housing Act, (the Act)[42 U.S.C. 3601, et seq.], and has been accepted for processing. As the Respondent receives Federal financial assistance from the U.S. Department of Housing and Urban Development (the Department), the subject complaint has also been filed under Title VI of the Civil Rights Act of 1964 (Title IV), Section 504 of the Rehabilitation Act of 1973 (Section 504), and the Americans with Disabilities Act enacted in 1990 (ADA).

Enclosed is a copy of the complaint. Please note that the relevant case numbers have been added to the top of the signed complaint. Please retain it for your records. All correspondence and information requests about this complaint must reference the complaint numbers.

While this complaint is pending, you will have the opportunity to resolve it through conciliation or settlement.

In addition to the administrative complaint process, the Complainant may, pursuant to Section 813 of the Act, commence a civil action in an appropriate Federal district or state court, as long as an Administrative Law Judge has not begun a hearing on this matter. Such civil action must be commenced no later than 2 years after the occurrence or termination of an alleged discriminatory housing practice, irrespective of whether a complaint has been filed with the Department. The 2-year period does not include the time the complaint is pending before the Department. However, once a trial begins, the Department will cease its administrative processing of the complaint.

Because this complaint alleges a discriminatory housing practice within the jurisdiction of the Colorado Civil Rights Division, (CCRD) and because CCRD's fair housing law is substantially equivalent to the Fair Housing Act, the complaint will be processed by CCRD pursuant to Section 810(f) of the Act. CCRD is located at, 1560 Broadway Street, Suite 1050, Denver, CO 80202-4941, (303) 894-2997 or 1-800-262-4845.

**EXHIBIT**
**6-1**

However, as CCRD does not have the authority to process the complaint under Title VI, Section 504, and ADA this Office will retain jurisdiction to process that portion of the complaint.

If the complaint is resolved by CCRD and/or if CCRD obtains sufficient evidence to allow the Department to make a determination under Title VI, Section 504, and ADA, it may not be necessary for the Department to conduct an on-site investigation.

During the administrative processing of this complaint, you are responsible for keeping CCRD informed of any change in address.  Failure to do so may be viewed as failure to cooperate in the investigation.

Unless otherwise notified, the aforementioned agency will be responsible for all processing action on this complaint.  Therefore, all correspondence or inquiries regarding this matter should be directed to CCRD.

Please be advised that retaliation against any person for participation in the enforcement of the Act is a discriminatory housing practice prohibited under Section 818 of the Act.

Your cooperation in this matter is appreciated.

Sincerely,

Amy M. Frisk

Amy M. Frisk
Acting Region VIII Director
Office of Fair Housing and Equal Opportunity

Enclosure(s)

cc: Teresita Reyes,
6039 Broadway
Greenwood Village, CO 80121



EXHIBIT
6-2

## DISCLOSURE NOTICE

Case Name:  Rivera v. South Metro Housing Options
Case Number:  08-13-0078-4

I understand that under Section 504 of the Rehabilitation Act, I have the right to file a complaint with the Department of Housing and Urban Development and to remain anonymous, to the extent possible, as the Department investigates and resolves my complaint.

I also understand, however, that I have no similar right to remain anonymous if I also file a complaint under the Fair Housing Act and that a copy of my Fair Housing Act complaint will be provided to the respondents I name in my complaint.

Printed Name: _____

Signature: _____

Date: _____

Please complete and sign form.  After completing, return to:

**U.S. Department of Housing and Urban Development**
**Office of Fair Housing and Equal Opportunity**
**1670 Broadway Street**
**Denver, CO 80202-4801**

*Returned 01-17-2013*

**EXHIBIT**
**6-3**

## Fernanda Rivera v. The Littleton Housing Authority

FIFTH CLAIM FOR RELIEF

AND SUPPORTING FACTUAL ALLEGATIONS

The Plaintiff is seeking $5,000.00 in monetary damages against the Respondent for discrimination on the basis of disability and national origin. (Pls. see **Exhibit 6-1 to 6-3**)

**ATTEMPTS TO LOCATE COUNSEL**

Please list the name, address, and telephone number of each attorney you have contacted requesting representation in this matter. The court encourages you to contact a minimum of three attorneys.

Attorney: WICK & TRAUTWEIN KEVIN WARD   Date Contacted: JUNE, 2013
Street Address: # 3 CLOCK TOWER SQUARE 323 SOUTH COLLEGE AVENUE
City: FORT COLLINS   State: CO
Zip Code: 80522   Telephone: (970) 237 - 5694

Attorney: KILLMER, LANE & NEWMAN   Date Contacted: MAY, 2013
Street Address: THE ODD FELLOWS HALL 1543 CHAMPA ST., SUITE 400
City: DENVER   State: CO
Zip Code: 80202   Telephone: (303) 571-1000

Attorney: JENNIFER GORMLEY   Date Contacted: FEB, 2013
Street Address: 6060 GREENWOOD PLAZA BLVD # 300
City: GREENWOOD VILLAGE   State: CO
Zip Code: 80111   Telephone: (303) 783 - 9600

Attorney: JULIE REISKIN COLORADO CROSS- DISABILITY COALITION   Date Contacted: SEPT. 2012
Street Address: 655 BROADWAY SUITE 775
City: DENVER   State: CO
Zip Code: 80203   Telephone: (303) 839 - 1775

Attorney: COLORADO LES EBERT LEGAL SERVICES   Date Contacted: JUNE, 2013
Street Address: 1905 SHERMAN STREET SUITE 400
City: DENVER   State: CO
Zip Code: 80203 - 1811   Telephone: (303) 830 - 7860

Date: 07 - 22 - 2013    _Jerenita Reyes_ FOR FERNANDA RIVERA
(Plaintiff's Original Signature)

Subscribed and sworn to before me this 22 day of July, 2013

_(signature)_
(Notary Public)
6834 S. University Blvd.
(Address) Centennial, Co 80122

My commission expires: January 30, 2015

(Seal: MARC MASSARO NOTARY PUBLIC STATE OF COLORADO)

(Rev. 07/06)